UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHEA CASTRO, Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>EPIC LIFT SYSTEMS, LLC &<br>TALLY PERSONNEL, LLC | Case No. 5:21-cv-772<br><br>Jury Demanded |

# ORIGINAL COMPLAINT

1. Shea Castro was a Field Tech employed by Epic Lift System, LLC and, later, Tally Personnel, LLC.

2. Like other Field Techs, Castro regularly worked more than 40 hours a week.

3. But neither Epic nor Tally paid Castro or the other Field Techs overtime as required by the Fair Labor Standards Act (FLSA) or applicable state law.

4. Instead, they paid Field Techs under a "salary plus" system.

5. Under that system, workers received what Epic and Tally sometimes referred to as a "salary" plus potential "service bonuses."

6. But regardless of how many hours Field Techs worked in a week, neither Epic nor (later) Tally paid the Field Techs any overtime.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over the state law claim(s) alleged pursuant to 29 U.S.C. § 1367(a). Defendants

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Castro lives and worked in this District and Division. Many of the relevant acts described herein took place in San Antonio, Texas.

## PARTIES

11. Castro worked for Epic as a Field Tech from approximately June 2018 until early 2021.

12. In early 2020, Tally started issuing Castro's paychecks.

13. At the same time, Tally became Castro's W-2 employer.

14. Tally listed Castro as its "employee number 0445."

15. Castro's written consent to this action is attached.

16. Castro brings this action individually and on behalf of other similarly situated Field Techs who were paid according to the "salary plus" plan (the "Field Techs").

17. Epic is a Texas limited liability company.

18. Tally is a Delaware limited liability company.

19. Epic and Tally are referred to collectively as "Defendants."

20. Both companies gave the Texas Secretary of State the same address in Houston, Texas, as their mailing address.

## COVERAGE UNDER THE FLSA

21. At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all times hereinafter mentioned, Defendants have been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all times hereinafter mentioned, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Epic and Tally have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as oil field equipment, personal protective equipment, pickup trucks, hand tools, and cell phones—that have been moved in or produced for commerce by any person. Further, Defendants have had and have an annual gross volume of sales made or business done of more than $3,000,000 (exclusive of excise taxes at the retail level which are separately stated).

24. At all times hereinafter mentioned, Castro and the Field Techs were engaged in commerce or in the production of goods for commerce.

**FACTS**

25. Epic is a company that provides artificial lift[1] solutions to exploration and production (E&P) companies.

26. In general, "artificial lift" is a process for increasing pressure within oil reservoirs to increase the rate and amount of production.

27. To provide its services to its clients, Epic employs Field Techs like Castro.

28. A Field Tech's primary function is to install and maintain artificial lift equipment and peripheral devices.

29. Field Techs' primary job duties are manual in nature.

30. Field Techs are blue collar workers.

---

[1] https://glossary.oilfield.slb.com/en/terms/a/artificial_lift

31.     Because Epic has "operations in Texas, Oklahoma, New Mexico, Louisiana, Colorado, Utah, Wyoming, Pennsylvania, Ohio, and West Virginia," Epic's Field Techs often work in multiple states over the course of a year.

32.     For example, Castro worked primarily in Texas, but also in other states, including Colorado and North Dakota.

33.     Defendants' Field Techs[2] work long hours.

34.     Castro averaged 60 to 70 hours a week.

35.     Castro's hours are typical of those worked by Field Techs.

36.     Neither Epic nor Tally required Field Techs to have an advanced degree.

37.     Most Field Techs do not have an advanced degree.

38.     A specialized academic training is not a standard prerequisite to working as a Field Tech.

39.     Field Techs do not supervise or manage any of Defendants' employees.

40.     Field Techs apply well-established Epic techniques and procedures and use established Epic standards to install and maintain oilfield equipment.

41.     Defendants do not pay its Field Techs overtime for hours worked in excess of 40 in a single workweek.

42.     Instead, Epic (and, later, Tally) paid these workers according to the "salary plus" pay plan, with no overtime compensation.

43.     For example, Castro's so-called "salary" was $75,000 a year, and he was also eligible for bonuses under certain circumstances.

44.     In early 2020, Epic transitioned its Field Techs to be "employees" of Tally.

---

[2] Defendants sometimes uses different job titles for Field Techs, but these workers all perform the same or similar duties.

45. These workers remained Epic's "employees" under the FLSA.

46. However, starting in early 2020, Tally also became an admitted employer of the Field Techs.

47. Tally issued their paychecks, keep their personnel records, and listed them as Tally "employees" in various reports to government agencies.

48. As a result of Defendants' uniform policies, Field Techs were denied the overtime pay required by law.

49. Because Castro and the other Field Techs were entitled to overtime under the law, they are owed overtime for all hours worked in excess of 40 hours in a week.

50. Defendants knew full well that Castro and the other Field Techs worked far more than 40 hours a week.

51. Defendants knew, or showed reckless disregard for, whether their Field Techs were entitled to overtime under the law.

52. Nonetheless, Defendants failed to pay overtime.

## FLSA VIOLATIONS

53. Defendants violated the FLSA by failing to pay Castro and the other Field Techs overtime.

54. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay overtime.

55. Defendants' failure to pay overtime was neither reasonable, nor was the decision not to pay overtime made in good faith.

56. Castro and the other Field Techs are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorneys' fees, and costs.

### NORTH DAKOTA WAGE VIOLATIONS

57. The conduct alleged violates North Dakota Century Code Title 34 and the North Dakota Minimum Wage and Work Conditions Order (N.D. Admin. Code § 46-02-07-01 et seq.) (the "North Dakota Wage Laws").

58. Defendants are subject to the requirements of the North Dakota Wage Laws.

59. During the relevant period, Defendants employed Castro and other Field Techs as "employees" within the meaning of the North Dakota Wage Laws.

60. The North Dakota Wage Laws require employers, like Defendants, to pay employees at one and one-half times their regular rates of pay when they work more than 40 hours in a week.

61. Castro and the other Field Techs employed in North Dakota were entitled to overtime pay under the North Dakota Wage Laws.

62. But Defendants failed to pay them overtime.

63. Castro and the other Field Techs employed in North Dakota seek unpaid overtime in amount equal to one and one-half times their regular rates of pay for hours worked after 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

64. Castro and the North Dakota Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by North Dakota law.

### COLLECTIVE ACTION ALLEGATIONS

65. The illegal pay practices Defendants imposed on Castro were likewise imposed on the Putative Class Members.

66. Numerous individuals were victimized by this pattern, practice, and policy, which is a willful violation of the FLSA.

67. Defendants paid numerous Field Techs, who perform similar work, in the same manner.

68. Defendants' failure to pay overtime at the rates required by state and federal law result from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of any particular Field Tech.

69. Absent this action, many Field Techs will not recover their unpaid overtime and Defendants will reap the unjust benefits from violating the FLSA.

70. Furthermore, even if some Field Techs could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

71. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

72. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

73. Therefore, this issue does not preclude collective treatment.

### JURY DEMAND

74. Castro demands a trial by jury.

### RELIEF SOUGHT

75. Castro prays for:

   a. An Order designating this lawsuit as a collective action and authorizing notice to all Field Techs; and

b. A judgment against Defendants awarding Castro and the other Field Techs: (1) all unpaid overtime; (2) liquidated damages equal in amount to the unpaid overtime; (3) all penalties and compensatory damages allowed under any applicable state law(s); (4) attorneys' fees, costs, and pre- and post-judgment interest; and (5) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ Rex Burch**
 Richard J. (Rex) Burch
 Texas Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CONSENT TO JOIN WAGE CLAIM

Print Name: Shea Castro

1. I hereby consent to participate in a collective action lawsuit against **Tally Epic Lift Systems** (and its related entities) to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: *Shea Castro* (DocuSigned by: 1B5F7A550C79447)